TRACY WINN, as Natural Parent and Guardian for the Minor SEDONA WINN, Appellant, v. SUNRISE HOSPITAL AND MEDICAL CENTER; MICHAEL CICCOLO, M.D.; CLINICAL TECHNICIAN ASSOCIATES, LLC; ROBERT TWELLS, CCP; and LEE P. STEFFEN, CCP, Respondents.

No. 54251

May 31, 2012

277 P.3d 458

*Richard Harris Law Firm* and *Kerry L. Earley*, Las Vegas, for Appellant.

*Alverson Taylor Mortensen & Sanders* and *Shirley Blazich, David J. Mortensen, LeAnn Sanders*, and *Laura S. Lucero*, Las Vegas, for Respondents Michael Ciccolo, M.D.; Clinical Technician Associates, LLC; Robert Twells, CCP; and Lee P. Steffen, CCP.

*Hall Prangle & Schoonveld, LLC*, and *Kenneth M. Webster* and *Jonquil L. Urdaz*, Las Vegas, for Respondent Sunrise Hospital and Medical Center.

# OPINION

By the Court, PARRAGUIRRE, J.:

Nevada's statute of limitations governing medical malpractice actions is NRS 41A.097. Subsection 2 of that statute provides that such actions must be filed within three years of the injury date and within one year of the injury's discovery. Both deadlines are tolled under subsection 3, however, when the health care provider has concealed information upon which the action is based.

In this appeal, we consider three issues regarding NRS 41A.097 subsections 2 and 3. First, we consider the circumstances in which a district court may appropriately determine, as a matter of law, the accrual date for subsection 2's one-year discovery period. Second, we consider the meaning of the term ''concealed'' in subsection 3 and examine what a plaintiff must establish in order to warrant a tolling of subsection 2's limitation periods. Finally, we consider

whether one defendant's alleged concealment of records can be imputed to other defendants for purposes of tolling subsection 2's limitation periods as to those defendants.

Because questions of fact remain as to whether subsection 2's one-year discovery period was tolled for concealment against respondent Sunrise Hospital and Medical Center, we vacate the district court's summary judgment in this regard and remand for further proceedings. However, because subsection 3's tolling-for-concealment provision does not apply against respondents Michael Ciccolo, M.D.; Clinical Technician Associates, LLC; Robert Twells, CCP; and Lee P. Steffen, CCP, we affirm the district court's summary judgment in their favor.

## FACTS AND PROCEDURAL HISTORY

On December 14, 2006, 13-year-old Sedona Winn underwent heart surgery at respondent Sunrise Hospital and Medical Center. Respondent Michael Ciccolo, M.D., was the operating physician who performed the surgery, and respondents Robert Twells, CCP, and Lee Steffen, CCP, were the perfusionists who acted as the pump team to maintain Sedona's blood flow during surgery (collectively, the doctors).

On the day after her surgery, Sedona's father, Robert Winn, was informed that she had suffered an "extensive brain injury" during the surgery. The brain injury rendered Sedona comatose and has led to permanent neurological impairment. In conveying this news to Winn, the doctors were unable to provide an explanation for how this tragic result arose from what was considered to be a relatively minor surgery.

By January 2007, Winn, acting as guardian ad litem for Sedona, had retained an attorney to represent him in a medical malpractice action against Sunrise and the doctors.[1] In mid-January, Winn's counsel sent a letter to Sunrise requesting that Sunrise produce "all patient records" relating to Sedona's surgery. Three days later, Winn's attorney sent Sunrise a second records request, this time for records pertinent to filing a claim for Social Security Disability benefits.

On February 14, 2007, in connection with the Social Security-related request, Sunrise provided Winn's attorney with a copy of 182 pages of records, which included Dr. Ciccolo's December 14, 2006, postoperative report. According to an affidavit Winn's med-

---

[1]Winn would also bring suit against Clinical Technician Associates, LLC, the employer of two of the doctors. This opinion's references to "the doctors" include Clinical Technician Associates, LLC.

We also note that Sedona's mother, Tracy Winn, was substituted as Sedona's guardian ad litem during the pendency of this appeal. Because Sedona's father served as her guardian in district court, we refer to Mr. Winn in this opinion.

ical expert would later produce, Dr. Ciccolo's report indicated that a "notable volume of air" was present in Sedona's left ventricle at "inappropriate times during the [surgical] procedure."

These 182 pages of records were sufficient for Winn's attorney to successfully pursue Sedona's Social Security claim. However, due to several delays, the reasons for which are still in dispute, Sunrise did not provide Winn's attorney with any additional records until December 2007. Even at this point, the records provided were only a "nearly complete" set. Not until February 12, 2008, did Sunrise finally provide Winn's attorney with a complete set of Sedona's records, which included a post-surgery MRI and CT scan.

Having obtained Sedona's complete set of records, Winn's attorney procured an expert affidavit in which a medical expert opined that Sunrise and the doctors had negligently caused Sedona's injuries.[2] In formulating his opinions, Winn's expert relied primarily on Dr. Ciccolo's postoperative report that Winn received from Sunrise on February 14, 2007. After obtaining the expert affidavit, Winn filed suit against Sunrise and the doctors on February 3, 2009.

Each of the respondents moved to dismiss Winn's complaint on the basis that it was barred by NRS 41A.097(2). Each respondent contended that because more than one year had elapsed between the time when Winn "discovered" Sedona's injury and the time when he filed suit, his claims were time-barred. Concluding that Winn had discovered Sedona's injury on December 15, 2006—the day following her surgery—the district court granted respondents' motions. This appeal followed.

## DISCUSSION

Before considering Winn's arguments on appeal, we first explain NRS 41A.097's general framework. In relevant part, NRS 41A.097 provides:

> 2. Except as otherwise provided in subsection 3, an action for injury or death against a provider of health care may not be commenced more than *3 years after the date of injury* or *1 year after the plaintiff discovers* or through the use of *reasonable diligence* should have discovered the injury, *whichever occurs first* . . . .

---

[2]Subject to exceptions not applicable here, NRS 41A.071 requires a district court to dismiss a medical malpractice complaint unless an expert affidavit is filed with the complaint. The affidavit must "support[ ] the allegations" contained in the complaint and must be "submitted by a medical expert who practices or has practiced in an area that is substantially similar to the type of practice engaged in at the time of the alleged malpractice." NRS 41A.071.

The record on appeal indicates that Winn procured two expert affidavits. For the sake of clarity, this opinion refers to these affidavits in the singular.

3. This time limitation is tolled for any period during which the provider of health care has *concealed* any act, error or omission upon which the action is based and which is known or through the use of reasonable diligence should have been known to the provider of health care.

(Emphases added.)

All parties to this appeal agree that Sedona's injury occurred no later than December 15, 2006, the day after her surgery when she was rendered comatose. The parties also correctly agree that subsection 2, by its terms, requires Winn to satisfy both the one-year discovery period *and* the three-year injury period.

The parties disagree, however, regarding three issues.[3] First, the parties disagree as to when Winn "discovered" Sedona's injury for purposes of triggering subsection 2's one-year discovery period. Second, Winn and Sunrise dispute the meaning of subsection 3's use of the term "concealed" as it relates to Sunrise's piecemeal production of records and Winn's resulting delay in filing suit. Finally, Winn and the doctors disagree as to whether Sunrise's alleged concealment of records can serve as a basis for tolling the one-year discovery period on Winn's claims against the doctors who played no role in the alleged concealment.

As explained below, the accrual date for subsection 2's one-year discovery period ordinarily presents a question of fact to be decided by the jury. Only when evidence irrefutably demonstrates this accrual date may a district court make such a determination as a matter of law. Although the evidence in this case does irrefutably demonstrate the accrual date, this date was two months later than the date identified by the district court. We conclude that this difference in timing, combined with our analysis below, may render Winn's claim against Sunrise timely if tolling principles apply.

We next conclude that a plaintiff must satisfy a two-prong test in order to establish that subsection 2's limitation periods should be tolled for concealment. Because factual issues remain as to whether Sunrise (1) intentionally withheld information that (2) was "material," meaning the information would have hindered a reasonably diligent plaintiff from timely filing suit, we vacate the district court's summary judgment in favor of Sunrise and remand so that Winn can be afforded the opportunity to make these showings.

---

[3]Winn also argues that NRS 41A.097's lack of a minority tolling provision renders the statute unconstitutional. Because he did not raise this argument in district court, we decline to address it on appeal. *See Munoz v. State ex rel. Dep't of Hwys.*, 92 Nev. 441, 444, 552 P.2d 42, 43-44 (1976) (refusing to consider a constitutional challenge that was not first raised in district court).

We further conclude, however, that one defendant's concealment cannot serve as a basis for tolling subsection 2's limitation periods as to defendants who played no role in the concealment. This conclusion, combined with the date when the one-year discovery period irrefutably accrued, renders Winn's claims against the doctors time-barred. We therefore affirm the district court's summary judgment in favor of the doctors.

*Standard of review*

Because the district court considered evidence outside of the pleadings in granting respondents' motions to dismiss, we treat each dismissal order as an order granting summary judgment. *Witherow v. State, Bd. of Parole Comm'rs*, 123 Nev. 305, 308, 167 P.3d 408, 409 (2007).

We review an appeal from an order granting summary judgment de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is appropriate "when the pleadings and other evidence on file demonstrate that no 'genuine issue as to any material fact [remains] and that the moving party is entitled to a judgment as a matter of law.' " *Id.* (alteration in original) (quoting NRCP 56(c)). When deciding a motion for summary judgment, "the evidence, and any reasonable inferences drawn from it, must be viewed in a light most favorable to the nonmoving party." *Id.*

*NRS 41A.097(2)'s discovery date may be determined as a matter of law only when the evidence irrefutably demonstrates that a plaintiff has been put on inquiry notice*

Winn filed suit against all respondents on February 3, 2009. Thus, absent any tolling of subsection 2's one-year discovery period, Winn would have had to discover Sedona's injury no earlier than February 3, 2008.

In *Massey v. Litton*, 99 Nev. 723, 669 P.2d 248 (1983), this court held that a plaintiff "discovers" his injury "when he knows or, through the use of reasonable diligence, should have known of facts that would put a reasonable person on *inquiry notice* of his cause of action." 99 Nev. at 728, 669 P.2d at 252 (emphasis added). While difficult to define in concrete terms, a person is put on "inquiry notice" when he or she should have known of facts that "would lead an ordinarily prudent person to investigate the matter further." *Black's Law Dictionary* 1165 (9th ed. 2009). We reiterated in *Massey* that these facts need not pertain to precise legal theories the plaintiff may ultimately pursue, but merely to the

plaintiff's general belief that someone's negligence may have caused his or her injury. 99 Nev. at 728, 669 P.2d at 252. Thus, Winn "discovered" Sedona's injury at a point when he had facts before him that would have led an ordinarily prudent person to investigate further into whether Sedona's injury may have been caused by someone's negligence.

In granting respondents' summary judgment motions, the district court concluded as a matter of law that Winn discovered Sedona's injury on December 15, 2006, the day following her surgery, when respondents were unable to provide an explanation for the surgery's catastrophic result. We believe this was improper, as "[t]he appropriate accrual date for the statute of limitations is a question of law only if the facts are uncontroverted." *Day v. Zubel*, 112 Nev. 972, 977, 922 P.2d 536, 539 (1996); *see also Bemis v. Estate of Bemis*, 114 Nev. 1021, 1025, 967 P.2d 437, 440 (1998) ("'Dismissal on statute of limitations grounds is only appropriate 'when uncontroverted evidence irrefutably demonstrates plaintiff discovered or should have discovered' the facts giving rise to the cause of action." (quoting *Nevada Power Co. v. Monsanto Co.*, 955 F.2d 1304, 1307 (9th Cir. 1992))).

Here, the record is unclear as to what respondents specifically conveyed to Winn in the wake of Sedona's surgery, and respondents' failure to provide Winn with an explanation is not, in and of itself, a tacit acknowledgment of negligence. Similarly, it is unlikely that an ordinarily prudent person would begin investigating whether a cause of action might exist on the same day as being informed that his or her child's surgery had gone drastically wrong. Accordingly, the evidence does not "irrefutably demonstrate[ ]" that Winn discovered Sedona's injury on December 15, 2006. *Bemis*, 114 Nev. at 1025, 967 P.2d at 440 (internal quotation omitted). The district court therefore erred in determining as a matter of law that subsection 2's one-year discovery period accrued on December 15, 2006.

However, the evidence does irrefutably demonstrate that Winn discovered Sedona's injury no later than February 14, 2007—the date when he received the initial 182 pages of medical records. At this point, Winn had not only hired an attorney to pursue a medical malpractice action, but he also had access to Dr. Ciccolo's postoperative report that referenced air being present in Sedona's heart at inappropriate times during the surgery. By this point at the latest, Winn and his attorney had access to facts that would have led an ordinarily prudent person to investigate further into whether Sedona's injury may have been caused by someone's negligence. *Massey*, 99 Nev. at 728, 669 P.2d at 252. Thus, as a matter of law,

the evidence irrefutably demonstrates that Winn was put on inquiry notice of his potential cause of action no later than February 14, 2007. *Bemis,* 114 Nev. at 1025, 967 P.2d at 440.

*Factual issues remain as to whether subsection 2's one-year discovery period should have been tolled due to Sunrise's alleged concealment of records*

Winn argues alternatively that his February 3, 2009, lawsuit is timely as to all respondents because subsection 2's one-year discovery period should have been tolled for concealment pursuant to subsection 3 until February 12, 2008. This is the date when Sunrise ultimately provided Winn with a complete set of records, which, according to Winn, was necessary to procure an expert affidavit.[4]

In response, Sunrise acknowledges that Winn did not receive a complete set of records until February 12, 2008. Nonetheless, Sunrise vigorously objects to the notion that it "concealed" these records from him, which is what subsection 3 requires for tolling. Viewing the facts in the light most favorable to Winn, *Wood v. Safeway, Inc.,* 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005), we conclude that factual issues remain as to whether the one-year discovery period should have been tolled.

Resolution of this issue requires us to consider the interplay between subsection 3's tolling provision and subsection 2's standard of "reasonable diligence." We begin by considering subsection 3's tolling provision, which provides that "[subsection 2's] time limitation is tolled for any period during which the provider of health care has *concealed* any act, error or omission upon which the action is based." NRS 41A.097(3) (emphasis added).

Subsection 3's use of the term "concealed" carries with it a specific connotation. While different legal authorities define concealment in slightly varying ways, these definitions generally in-

---

[4]We recognize that some jurisdictions with similar statutes of limitation refuse to toll their respective discovery periods. *See, e.g., Sanchez v. South Hoover Hospital,* 553 P.2d 1129, 1134 (Cal. 1976) ("Notwithstanding a defendant's continuing efforts to conceal, if plaintiff discovers the claim independently, the limitations period commences."); *Shockley v. Dyer,* 456 A.2d 798, 799 (Del. 1983) ("Where there has been fraudulent concealment from a plaintiff, the statute is suspended only until his rights are discovered or until they could have been discovered by the exercise of reasonable diligence.").

We decline to follow this approach, as subsection 3's plain language makes clear that the tolling-for-concealment exception applies to subsection 2 as a whole—not just to the outer three-year injury period. *See Karcher Firestopping v. Meadow Valley Contr.,* 125 Nev. 111, 113, 204 P.3d 1262, 1263 (2009) ("If a statute's language is clear and unambiguous, this court will apply its plain language."). Considering NRS 41A.071's expert affidavit requirement, this is logical. Otherwise, a defendant could simply stonewall a plaintiff's request for medical records for one year and thereby be immune from suit.

clude two specific elements: (1) an intentional act by one party that (2) prevents or hinders another party from learning something. *See, e.g., Black's Law Dictionary* 327 (9th ed. 2009) (defining concealment as *"an act* by which one *prevents or hinders"* another party from realizing something (emphases added)); Restatement (Second) of Contracts § 160 (1981) (defining concealment as "an *affirmative act intended* or known to be likely to *keep another* from learning of a fact" (emphases added)). Thus, by using the term "concealed" in subsection 3, it is evident that the Legislature intended for subsection 3's tolling provision to apply only in situations when these two elements are present. *State v. State, Employees Assoc.*, 102 Nev. 287, 289, 720 P.2d 697, 699 (1986) ("When a statute uses words which have a definite and plain meaning, the words will retain that meaning unless it clearly appears that such meaning was not so intended.").

In addition to establishing that a defendant "concealed" information under subsection 3, a plaintiff seeking to toll subsection 2's one-year discovery period must also establish that he or she satisfied subsection 2's standard of "reasonable diligence."[5] Thus, regardless of a plaintiff's subjective concern regarding the significance of withheld information, the plaintiff must show that this information would have objectively hindered a reasonably diligent plaintiff from timely filing suit. In other words, the plaintiff must show that the withheld information was "material." *Cf. Basic Inc. v. Levinson*, 485 U.S. 224, 240 (1988) (equating "materiality" of undisclosed information with the significance that a "reasonable investor" would ascribe to the information); Restatement (Second) of Torts § 538(2)(a) (1977) (indicating that a matter is "material" if "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action").

Accordingly, when subsection 3 and subsection 2 are read in tandem, Winn must satisfy the following two-prong test in order to establish that subsection 2's one-year discovery period should be tolled: (1) that Sunrise intentionally withheld information, and (2) that this withholding would have hindered a reasonably diligent plaintiff from procuring an expert affidavit.

As to whether Sunrise intentionally withheld information, the record on appeal provides us with no clear guidance. Winn evi-

---

[5]Given subsection 3's applicability to both of subsection 2's limitation periods, this interpretation is proper. *Karcher,* 125 Nev. at 113, 204 P.3d at 1263 ("The goal of statutory interpretation is to effectuate the Legislature's intent.").

dently canceled and reinstated the same records request on numerous occasions, which may have left Sunrise without clear direction as to whether it should provide the roughly 3,000 additional pages of records in addition to the 182 pages it had already provided Winn in February 2007. Although the district court's summary judgment order did conclude that subsection 3's tolling provision was inapplicable, it provided no factual findings to support this conclusion—for example, when Winn had a pending request, and what Sunrise's response was to this request. Thus, factual issues remain as to when Sunrise was presented with an unequivocal request for medical records and whether Sunrise, upon receiving this request, intentionally withheld the requested records.

As to whether such withholding would have hindered a reasonably diligent plaintiff from procuring an expert affidavit, Sunrise and Winn are in disagreement. Sunrise indicates that even once Winn procured his expert affidavit, the expert relied largely upon Dr. Ciccolo's postoperative report, a document that was among the initial 182 pages of records that Sunrise provided in February 2007. Thus, Sunrise contends, even if the delay in providing a complete set of records may have hindered Winn from filing suit, the delay would not have hindered a reasonably diligent plaintiff from doing the same.

Winn, on the other hand, indicates that these initial 182 pages did not contain records such as Sedona's post-surgery MRI and CT scans—records that Winn contends were critical for his expert's review of the case. In other words, Winn contends that even though his expert may not have expressly referenced these particular records in his affidavit, it was nonetheless imperative that his expert review them before opining under oath that respondents were negligent.

At its core, the parties' disagreement comes down to a question of materiality. Although Winn's expert may ultimately have *referenced* the postoperative report in his affidavit, the record on appeal is silent as to whether other records were material to conducting a full *review* of Sedona's case. *See Levinson*, 485 U.S. at 240; Restatement (Second) of Torts § 538(2)(a) (1977). Thus, based upon the facts before us, we are unable to affirm the district court's summary judgment in favor of Sunrise, and we therefore vacate that order.

On remand, Winn is to be afforded an opportunity to show that subsection 2's one-year discovery period should have been tolled as to his claim against Sunrise. Winn must satisfy a two-prong test: (1) that Sunrise intentionally withheld records after being pre-

sented with an unequivocal request for them, and (2) that this intentional withholding would have hindered a reasonably diligent plaintiff from procuring an expert affidavit.

*One defendant's concealment cannot toll the statute of limitations as to a second defendant who played no role in the concealment*

Again relying on subsection 3's tolling-for-concealment language, Winn contends that Sunrise's alleged concealment serves to toll subsection 2's one-year discovery period as to all respondents in this case—Sunrise and the doctors alike. The doctors disagree. They contend that Winn's only allegation of concealment was directed toward Sunrise, the party that had access to the records in question and the only party from whom Winn requested any records. Thus, the doctors conclude, because Winn has not alleged that the doctors concealed anything from him that could plausibly warrant tolling the one-year discovery period as to them, his claims against them are time-barred.

We agree with the doctors. Subsection 3's plain language states that subsection 2's limitation periods are tolled "for any period during which *the* provider of health care has concealed any act, error or omission upon which the action is based." NRS 41A.097(3) (emphasis added). By using this defendant-specific language, it is apparent that the Legislature meant for subsection 3 to toll subsection 2's limitation periods only with respect to the defendant responsible for the concealment. *See Sheriff v. Burcham*, 124 Nev. 1247, 1253, 198 P.3d 326, 329 (2008) ("[W]e only look beyond the plain language of the statute if that language is ambiguous or its plain meaning clearly was not intended.").

This conclusion is reinforced by the public-policy considerations that form the basis for any statute of limitations. Namely, such limitation periods are meant to provide a concrete time frame within which a plaintiff must file a lawsuit and after which a defendant is afforded a level of security. *See Petersen v. Bruen*, 106 Nev. 271, 274, 792 P.2d 18, 19 (1990) ("[S]tatutes of limitation embody important public policy considerations in that they stimulate activity, punish negligence, and promote repose by giving security and stability to human affairs." (internal quotation omitted)).

In this regard, a tolling-for-concealment provision included within a generally applicable statute of limitations is an exception to the general rule, meant merely to prevent a defendant from taking affirmative action to prevent the plaintiff from bringing

suit. *Brown v. Bleiberg*, 651 P.2d 815, 821 (Cal. 1982) ("[T]he rationale of the tolling doctrine is estoppel."); *Smith v. Boyett*, 908 P.2d 508, 512 (Colo. 1995) ("The knowing concealment exception . . . embodies the common law concept that a wrongdoer should not be able to take advantage of his own wrong.").

Thus, within this public-policy framework, a defendant who has done nothing to delay a plaintiff's lawsuit should not be punished solely on the basis of an unrelated third party's conduct. *See Jensen v. IHC Hospitals, Inc.*, 82 P.3d 1076, 1083 (Utah 2003) ("[T]he alleged fraud of one defendant generally cannot be imputed to another defendant for tolling purposes when the other defendant did not participate in the alleged fraud." (footnote omitted)); *see also Brown*, 651 P.2d at 821 (declining to toll a medical malpractice statute of limitations as to one defendant when the only alleged concealment was by a different defendant).

In this case, Winn's only allegation of concealment was directed toward Sunrise, as he never requested any records from the doctors. He therefore cannot rely on subsection 3 as a basis for tolling subsection 2's one-year discovery period as to the doctors. Because he discovered Sedona's injury no later than February 14, 2007, and because he filed suit against the doctors on February 3, 2009, Winn's claims against the doctors are time-barred by subsection 2's one-year discovery period. We therefore affirm the district court's summary judgment in favor of respondents Michael Ciccolo, M.D.; Clinical Technician Associates, LLC; Robert Twells, CCP; and Lee P. Steffen, CCP.

## CONCLUSION

We conclude that the accrual date for NRS 41A.097(2)'s one-year discovery period ordinarily presents a question of fact to be decided by the jury. Only when the evidence irrefutably demonstrates that a plaintiff was put on inquiry notice of a cause of action should the district court determine this discovery date as a matter of law. Although we agree with the district court that the evidence in this case irrefutably demonstrates that Winn was put on inquiry notice, we disagree as to when this occurred. This difference in timing, combined with our analysis of NRS 41A.097(3)'s tolling-for-concealment provision, precludes affirming the district court's summary judgment in favor of Sunrise.

With regard to Winn's tolling-for-concealment argument, we conclude that factual issues remain as to whether Sunrise concealed records from Winn so as to warrant tolling NRS 41A.097(2)'s one-year discovery period. We therefore vacate the district court's summary judgment in favor of Sunrise and remand this case so that Winn may be afforded an opportunity to show that

Sunrise intentionally withheld records that would have hindered a reasonably diligent plaintiff from procuring an expert affidavit.

We further conclude, however, that one defendant's concealment cannot serve as a basis for tolling NRS 41A.097(2)'s statutory limitation periods as to defendants who played no role in the concealment. This conclusion, combined with the date when Winn was irrefutably put on inquiry notice, renders Winn's claims against the doctors time-barred. We therefore affirm the district court's summary judgment in favor of the doctors.

CHERRY, C.J., and DOUGLAS, SAITTA, GIBBONS, PICKERING, and HARDESTY, JJ., concur.